O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FELIPE M. NAVARRO JR.,                    )   NO. CV 12-04125-MAN
                                          )
                        Plaintiff,        )
                                          )   MEMORANDUM OPINION
          v.                              )
                                          )   AND ORDER
CAROLYN W. COLVIN,[1]                     )
Acting Commissioner of Social             )
Security,                                 )
                                          )
                        Defendant.        )
_____)

          Plaintiff filed a Complaint on May 24, 2012, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  On June 15, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on February 13, 2013, in which:  plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

_____

          [1]     Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  (See Fed. R. Civ. P. 25(d).)

SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On July 1, 2008, plaintiff filed an application for a period of disability and DIB. (Administrative Record ("A.R.") 8.)  On July 31, 2008, plaintiff filed an application for SSI.  (Id.) Plaintiff, who was born on June 10, 1959 (A.R. 20),[2] claims to have been disabled since April 10, 2005 (A.R. 8), due to back injury, hypertension, diabetes mellitus, obesity, substance induced mood disorder, personality disorder, and major depressive disorder (A.R. 10-11).

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 8), plaintiff requested a hearing (A.R. 37-41).  On January 11, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Charles E. Stevenson (the "ALJ").  (A.R. 8, 42-66.)  Vocational expert Alan Boroskin and medical expert Joseph Malancharuvil also testified.  (Id.)  On February 4, 2011, the ALJ denied plaintiff's claim (A.R. 8-22), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).  That decision is now at issue in this action.

SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through September 30, 2010, and "has not engaged in substantial gainful activity since April 10, 2005, the alleged onset date."  (A.R. 10.)  The ALJ determined that plaintiff has the severe impairment of "back injury."  (Id.)  The ALJ also determined that plaintiff's impairments of hypertension, diabetes mellitus, obesity, substance induced mood disorder, and personality disorder are not severe.  (A.R. 10-11.)  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[2]    On the alleged disability onset date, plaintiff was 45 years old, which, contrary to the ALJ's finding, is not "defined as an individual closely approaching advanced age" but rather is defined as a younger individual.  (A.R. 20; citing 20 C.F.R. §§ 404.1563, 416.963.)

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).  (A.R. 14.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "a range of medium work as defined in 20 C.F.R. [§§] 404.1567(c) and 416.967(c) . . . as follows":

> [Plaintiff] can lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying; he can have no exposure to concentrated fumes, odors, dusts, or gases; he is precluded from climbing ladders; and he is restricted from working at unprotected heights or with hazardous equipment.

(A.R. 14.)   The ALJ further concluded that "[plaintiff] has no past relevant work."  (A.R. 20.) However, based upon plaintiff's RFC and after having considered plaintiff's age, education,[3] work experience, and the testimony of the vocational expert, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including the jobs of "assembly worker" and "hand packager."  (A.R. 21.)  Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from April 10, 2005, through the date of his decision.  (A.R. 21-22.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

---

[3]    The ALJ found that plaintiff "has at least a high school education and is able to communicate in English."  (A.R. 20.)

1   whether it is free from legal error and supported by substantial evidence in the record as a whole.

2   Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence

3   as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (citation omitted).

4   The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett

5   v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute

6   substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v.

7   Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

8

9        Although this Court cannot substitute its discretion for that of the Commissioner, the Court

10  nonetheless must review the record as a whole, "weighing both the evidence that supports and

11  the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health

12  and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995

13  (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

14  testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

15  1995).

16

17       The Court will uphold the Commissioner's decision when the evidence is susceptible to

18  more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

19  However, the Court may review only the reasons stated by the ALJ in his decision "and may not

20  affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett,

21  340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless

22  error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential

23  to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

24  Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400

25  F.3d at 679.

26  ///

27  ///

28  ///

4

DISCUSSION

Plaintiff claims that the ALJ erred in:  (1) his consideration of the opinion of the treating physician; (2) finding that plaintiff has a non-severe mental impairment; (3) assessing a complete and accurate RFC; (4) posing a complete hypothetical question to the vocational expert; and (5) finding that plaintiff can perform jobs such as assembly worker and hand packager.  (Joint Stipulation ("Joint Stip.") at 3.)

I.      The ALJ Failed To Set Forth Appropriate Reasons For Rejecting The
        Opinion Of Plaintiff's Treating Physician.

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  Id.

Plaintiff was treated at Tri-City Mental Health Center by psychiatrist Carlos Pieroni, M.D. and other medical personnel for his mental impairments.  In a December 19, 2005 Tri-City Mental

1   Health Center progress note, it was reported that plaintiff:  "has a history of depression, suicide

2   attempts, [and] drug abuse"; "lacks energy, does not sleep well, has poor concentration, [and]

3   has attempted suicide two times in 2004"; and "exhibits symptoms of hopelessness, worthlessness

4   and isolation from family and peers." (A.R. 377-79.)  It was noted that "[plaintiff]'s symptoms are

5   impairing him [from] hav[ing] a normal and stable social family life," and "[h]e is unable to hold

6   a job or attend school due to his depression."  Plaintiff was diagnosed with major depressive

7   disorder, recurrent.  (A.R. 379.)

8

9          On January 20, 2006, plaintiff was seen by Dr. Pieroni. (A.R. 372-74.)  In the mental status

10  section of his report, Dr. Pieroni noted that plaintiff's complaints/symptoms included depression,

11  anxiety, fatigue, tearfulness, low motivation, poor concentration, and suicidal thoughts.  (A.R.

12  372.)    Dr. Pieroni reported that plaintiff's:    behavior was "tearful"; mood/affect was

13  depressed/restricted; thought content included auditory hallucinations, "like someone calling

14  [him]"; attention was 0/3; and judgment and insight were limited.  (A.R. 373.)  Plaintiff was

15  diagnosed with, inter alia, major depression, recurrent and severe with psychotic features, and

16  he was assessed with a Global Assessment of Functioning ("GAF") score of 51.[4]  (A.R. 374.)

17

18         In an August 8, 2008 Tri-City Mental Health Center Initial Assessment form, plaintiff

19  reported that while his medication and counseling sessions had "helped" him (A.R. 453), he still:

20  felt isolated, withdrawn, hopeless, depressed, tearful, and overwhelmed in crowds; and had poor

21  sleep and appetite, "a lack of pleasure in all activities," "difficulty getting out of bed," "ruminating

22  thoughts," suicidal thoughts, auditory hallucinations, and flashbacks from a traumatic experience.

23  (A.R. 458, 460.)  While a portion of plaintiff's mental status exam was fairly normal, it was noted

24  that:  plaintiff's appearance was "odorous/dirty"; and plaintiff had poor concentration, visual

25  _____

26      [4]      The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on
    a hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental
27  Disorders, DSM-IV-TR, 34 (rev. 4th ed. 2000).  A rating of 51-60 reflects "[m]oderate symptoms
    (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in
28  social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."
    Id.

hallucinations, and suicidal ideation with no plan.  (A.R. 458.)  Plaintiff was diagnosed with major depressive disorder with psychotic features and post traumatic stress disorder ("PTSD").  (A.R. 457.)  Plaintiff was assessed with a GAF score of 42.[5]  (A.R. 457.)

In an August 15, 2008 "Tri-City Mental Health Center -- Initial Medication Evaluation" form, it was noted that plaintiff had a history of suicidal ideation, some anxious and restless behavior, a depressed and tearful mood/affect, and auditory hallucinations.  (A.R. 495.)  Plaintiff was assessed with a GAF score of 55 and was diagnosed with major depressive disorder with psychotic features, post traumatic stress disorder ("PTSD"), and pain syndrome.  (A.R. 496.)

On April 15, 2009, Dr. Pieroni completed a Complex Medication Support Service report, in which he noted that plaintiff had a normal affect, speech, and behavior with no suicidal ideation.  (A.R. 718.)  Dr. Pieroni noted that plaintiff was less sad and showed "gradual improvement"; however, plaintiff still experienced occasional auditory hallucinations.  (Id.)  Plaintiff was diagnosed with major depressive disorder and PTSD.  (A.R. 719.)

In a June 10, 2009 Complex Medication Support Service report, Dr. Pieroni noted that plaintiff had a depressed mood and was experiencing increased auditory hallucinations and increased depression, which was "apparently not related to stress."  (A.R. 703, 705.)  Dr. Pieroni noted that plaintiff's diagnosis remained the same.  (A.R. 703.)

On that same day, Dr. Pieroni completed a Work Capacity Evaluation (Mental) form, in which he opined that plaintiff had "marked" limitations in his ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, interact appropriately with the general public, get along with co-workers or peers without distracting them

---

[5]      A GAF rating of 41-50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV-TR, at 34.

1    or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. (A.R.
2    782-83.)   In addition, Dr. Pieroni opined that plaintiff would have "moderate" limitations in his
3    ability to:   perform activities within a schedule, maintain regular attendance, and be punctual
4    within customary tolerances; sustain an ordinary routine without special supervision; work in
5    coordination with or in proximity to others without being distracted by them; accept instructions
6    and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and
7    adhere to basic standards of neatness and cleanliness; and set realistic goals or make plans
8    independently of others. ( Id.)   Dr. Pieroni further opined that plaintiff would have "slight"
9    limitations in his ability to:   understand, remember, and carry out very short and simple
10   instructions; make simple work-related decisions; ask simple questions or request assistance; and
11   be aware of normal hazards and take appropriate precautions.   (Id.)   Based on plaintiff's
12   treatment and impairments, which Dr. Pieroni expected to last at least 12 months, he opined that
13   plaintiff would be absent from work three or more days per month.  (A.R. 783.)

14

15        In a September 30, 2009 Complex Medication Support Service form, Dr. Pieroni noted that
16   while plaintiff had a normal affect, clear speech, and no suicidal ideation, plaintiff had a depressed
17   mood and continuing auditory hallucinations.  (A.R. 683.)  Dr. Pieroni assessed plaintiff as having
18   increased, stress-related depression, and Dr. Pieroni diagnosed plaintiff with major depressive
19   disorder and PTSD.  (A.R. 684.)

20

21        In a March 26, 2010 Brief Follow-Up Medication Support Service form, Dr. Pieroni noted
22   that plaintiff was "alert, oriented," and cooperative, and he had a normal affect and euthymic
23   mood with no suicidal ideation.  (A.R. 759.)   The ALJ noted, however, that plaintiff's auditory
24   hallucinations remained "unchanged."  (Id.)  Dr. Pieroni diagnosed plaintiff with major depressive
25   disorder and PTSD, but Dr. Pieroni noted that plaintiff's condition was "improving."  (Id.)

26

27        On June 11, 2010, in a Brief Follow-Up Medication Support Service form, Dr. Pieroni noted
28   that plaintiff was cooperative, and had a normal affect, attention, concentration, memory, speech,

1    and behavior with no suicidal ideation.  (A.R. 746.)  Dr. Pieroni noted, however, that plaintiff had
2    a "sad mood" and his auditory hallucinations remained "unchanged."  (Id.)  Dr. Pieroni diagnosed
3    plaintiff with major depressive disorder and improving PTSD.  (Id.)

5         In a Brief Follow-Up Medical Support Service form dated September 1, 2010, Dr. Pieroni
6    noted that plaintiff had normal affect, clear speech, no suicidal ideation, and a "less sad" mood,
7    but plaintiff's auditory hallucinations remained "unchanged."  (A.R. 731.)  Dr. Pieroni diagnosed
8    plaintiff with major depressive disorder, which was improving, and PTSD.  (Id.)  One day later,
9    on September 2, 2010, Dr. Pieroni completed another Work Capacity Evaluation (Mental) form
10   which was nearly identical to his June 10, 2009 form.  (A.R. 780-81.)  Notably, however, the
11   September 2, 2010 form reflected an improvement in plaintiff's ability to maintain attention and
12   concentration for extended periods.  (A.R. 780.)

14        In a Brief Follow-Up Medication Support Service form dated October 27, 2010, Dr. Peironi
15   noted that, while plaintiff had a normal affect, normal speech and behavior with no suicidal
16   ideation and was alert and oriented, he had a "worried" mood and an increase in auditory
17   hallucinations.  (A.R. 725.)  Dr. Pieroni's diagnosis of major depressive disorder and PTSD
18   remained unchanged.  (Id.)

20        In his decision, the ALJ gave "little weight" to the opinion of Dr. Pieroni, because his:
21   (1) findings "appear to have been completed as an accommodation to [plaintiff]"; (2) checklist-
22   style forms "include only conclusions regarding functional limitations without any rationale for
23   those conclusions"; and (3) "medical opinion in these forms is inapposite to the mental status
24   examinations and treatment history described [by the ALJ in his decision], which indicate [plaintiff]
25   responded well to psychotropic medication and was generally in a stable mental condition."  (A.R.
26   13.)

28        The ALJ's first reason for rejecting Dr. Pieroni's opinion -- to wit, that his findings appear

9

1   to have been completed as an accommodation to plaintiff -- is unavailing.  The ALJ has failed to
2   point to, and the record does not contain, any evidence of impropriety or bias on the part of Dr.
3   Pieroni.  See Lester, 81 F.3d at 832 ("'The Secretary may not assume that doctors routinely lie in
4   order to help their patients collect disability benefits'")(citation omitted).  Accordingly, the ALJ's
5   first rationale does not constitute a specific and legitimate reason for rejecting the opinion of Dr.
6   Pieroni.

7

8          The ALJ's second reason for rejecting the opinion of Dr. Pieroni is also unavailing.  While
9   it is true that an ALJ may reject "'check-off reports that [do] not contain any explanation of the
10  bases of their conclusions,'" Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)(citation
11  omitted), the treatment notes from Dr. Pieroni and other medical personnel at Tri-City Medical
12  Center are supportive of the limitations noted by Dr. Pieroni in his Work Capacity Evaluation
13  (Mental) forms dated June 10, 2009, and September 2, 2010.  For example, in these forms, Dr.
14  Pieroni found that plaintiff had, inter alia:  "moderate" limitations in his "ability to work in
15  coordination with or in proximity to others without being distracted by them"; "marked" limitations
16  in his "ability to inter[act] appropriate with the general public; and marked" limitations in his
17  "ability to get along with co-workers or peers without distracting them or exhibiting behavioral
18  extremes." (A.R. 588-89; 782-83.)  As properly noted by plaintiff, in an August 10, 2010 Tri-City
19  therapy progress report, it was noted that:  plaintiff had "difficulty 'settling down' to the group
20  topics"; plaintiff's "presentation did not match the topic of the group"; and plaintiff "teased a peer"
21  during the group session.  (A.R. 733; see also, A.R. 679 (10/20/09 progress note - "[d]uring the
22  group [session, plaintiff] is verbal but continues to show difficulty in listening in addition to
23  speaking"); A.R. 692 (8/25/09 progress note - "client presented with loud and pressured speech";
24  "[a]lthough overbearing to peers at time, [plaintiff] was easier to refocus this afternoon"); A.R.
25  687 (9/29/09 progress note - "[plaintiff] was loud in his tone and spoke continuously making it
26  difficult for others to respond"; "[d]uring group [plaintiff] is verbal but continues to show difficulty
27  in listening in addition to speaking").)  Additionally, in a September 7, 2010 progress note, it was
28  noted that plaintiff "laugh[ed] and tease[d his peers] inappropriately." (A.R. 728.)  Indeed, even

10

the ALJ acknowledged that progress notes reflect that plaintiff "joked  around and was disrespectful during some of his sessions." (A.R. 11.)  Treatment notes also support Dr. Pieroni's finding in the June 10, 2009 and September 2, 2010 forms that plaintiff has moderate limitations in his "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." (A.R. 589, 783.)  As noted by plaintiff, several Tri-City progress notes reference the fact that plaintiff was "odorous/dirty," "dressed sloppy," and/or had "poor hygiene." See e.g., A.R. 458 (8/8/08 Initial Assessment report - "odorous/dirty"); A.R. 735 (8/4/10 progress note - "dressed sloppy and poor hygiene"); A.R. 738 (7/16/10 progress note - "dressed sloppy and poor hygiene"); A.R. 755 (5/3/10 progress note - "poor hygiene")).  Thus, as shown by these examples, because the treatment records are supportive of the Dr. Pieroni's findings, the ALJ's second reason does not constitute a specific and legitimate reason for wholesale rejection of Dr. Pieroni's opinion.[6]

The ALJ's third reason for rejecting the opinion of Dr. Pieroni -- to wit, that Dr. Pieroni's medical opinion is contrary to the mental status examinations and treatment history, which indicate plaintiff "responded well to psychotropic medication and was generally in stable mental condition" -- also is not specific and legitimate.  In support of his reasoning, the ALJ cites an August 8, 2008 Initial Assessment form completed at Tri-City Mental Health Center as evidence of plaintiff's "generally . . . stable mental condition." (A.R. 458.)  While it is true that a portion of the mental status exam was normal and that plaintiff reported that his counseling and medication had "helped" him, the ALJ's characterization of plaintiff's over-all mental condition as "stable" is misleading. (A.R. 453.)  Significantly, the ALJ failed to note that the same record also revealed that plaintiff:  had auditory hallucinations, suicidal ideation, poor concentration, an impaired memory, and a depressed, withdrawn, and tearful mood; was "odorous/dirty"; was diagnosed with major depressive disorder with psychotic features and PTSD; and was assessed

---

[6]     Moreover, the ALJ provides no reason for the apparent outright rejection of the diagnoses of major depressive disorder and PTSD by Dr. Pieroni, who, as a pyschiatrist, is an expert in his field.

1   with a GAF score of 42.  (A.R. 457-58.)  The ALJ also cites a April 20, 2009 Claim for Disability

2   Insurance Benefits - Doctor's Certificate, in which Dr. Peironi noted his:  diagnosis of "major

3   depression, recurrent, severe, with psychotic features" for which he prescribed plaintiff

4   medication; and findings of, inter alia, depressed mood, auditory hallucinations, anxiety, visual

5   hallucinations, and tearfulness.  (A.R. 590.)  Although not entirely clear, the ALJ presumably cited

6   this certificate, because Dr. Peironi opined that plaintiff would be able to return to his work within

7   6 months.  (A.R. 590.)  Indeed, treatment notes from Dr. Pieroni during this time period noted

8   that plaintiff's condition was improving.  However, less than two months later, Dr. Pieroni noted

9   that plaintiff's condition had worsened as evidenced by the increase in his auditory hallucinations

10  and depression.  As such, the ALJ's third reason cannot constitute a specific and legitimate reason

11  for discrediting Dr. Peironi's opinion.

13  Accordingly, for the aforementioned reasons, the ALJ failed to properly reject the opinion

14  of Dr. Pieroni.

16  II.   The ALJ Should Revist His Severity Determination With Respect To

17        Plaintiff's Mental Impairments.

19  At step two of the sequential evaluation process, the ALJ is tasked with identifying a

20  claimant's "severe" impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii),

21  416.920(c).  A severe impairment is one that "significantly limits [a claimant's] physical or mental

22  ability to do basic work activities."[7]  20 C.F.R. §§ 404.1592(c), 416.920(c).  Despite use of the

23  term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is

25      [7]      Basic work activities are "the abilities and aptitudes necessary to do most jobs."  20
26  C.F.R. §§ 404.1521, 416.921(b).  Examples of such activities include:  (1) "[p]hysical functions
    such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling"; (2) the
    capacity for "seeing, hearing, and speaking"; (3) "[u]nderstanding, carrying out, and remembering
27  simple instructions"; (4) the "[u]se of judgment"; (5) "[r]esponding appropriately to supervision,
    co-workers and usual work situations"; and (6) "[d]ealing with changes in a routine work setting."
28  Id.

12

1    a de minimis screening device to dispose of groundless claims." <u>Smolen v. Chater</u>, 80 F.3d 1273,

2    1290 (9th Cir. 1996).  Accordingly, "[a]n impairment or combination of impairments may be found

3    'not severe only if the evidence establishes a slight abnormality that has no more than a minimal

4    effect on [a claimant's] ability to work.'" <u>Webb v. Barnhart</u>, 433 F.3d 683, 686-87 (9th Cir. 2005)

5    (citation omitted; emphasis in original).

6

7        In his decision, the ALJ found that "[plaintiff]'s medically determinable mental impairments

8    of substance induced mood disorder and personality disorder not otherwise specified, considered

9    singly and in combination, do not limit plaintiff ability to perform basic mental work activities."

10   (A.R. 11.) Specifically, the ALJ found that "[plaintiff]'s medically determinable mental impairments

11   cause no restrictions in activities of daily living, no difficulties in social functioning, and no

12   difficulties with regard to concentration, persistence or pace, and have resulted in no episodes of

13   decompensation of extended duration."  (A.R. 12; emphasis added.)  Accordingly, the ALJ

14   determined that plaintiff's mental impairments are "nonsevere."  (Id.)

15

16       Curiously, however, all the examining and treating physicians cited by the ALJ in his

17   decision opined that plaintiff had at least mild mental limitations.[8]  For example, consultative

18   examiner Reyanaldo Abejuela, M.D., a psychiatrist, whose opinion the ALJ gave "significant

19   weight, but not full weight" (A.R. 12), opined that plaintiff was:  mildly impaired in his ability to

20   understand, carry out, and remember complex instructions; slightly impaired in concentration,

21   persistence, and pace; slightly impaired in his ability to respond to coworkers, supervisors, and

22   the public; slightly impaired in his ability to respond appropriately to work situations; and slightly

23   impaired in his ability to deal with changes in a routine work setting.  (A.R. 427).  Psychologist

24   Joseph Malancharuvil, who was retained by the Commissioner to testify as a medical expert at the

25   administrative hearing and reviewed the entire medical record, opined that plaintiff had:  mild

26

27          [8]      The only exception is psychologist Andrew Clark, who treated plaintiff on March 26, 2008, and April 4, 2008, while he was incarcerated.  (A.R. 398, 400.)  Although Dr. Clark opined

28   that plaintiff had a mood disorder, it does not appear that Dr. Clark expressed any opinion regarding plaintiff's mental limitations.  (Id.)

restriction in activities of daily living; mild difficulties in social functions; and mild to moderate difficulties with regard to concentration, persistence, or pace. (A.R. 46.) Moreover, Dr. Pieroni, whose opinion the ALJ failed to consider properly, opined that plaintiff had mild to marked mental limitations resulting from his impairments of major depressive disorder and PTSD -- impairments which the ALJ inexplicably failed to include in his severity determination.

Accordingly, in view of the above-noted opinions regarding plaintiff's mental limitations and the fact that the ALJ made no determination regarding the severity of plaintiff's diagnosed impairments of major depressive disorder and PTSD, the ALJ must revisit his step two severity determination and determine whether plaintiff's mental impairments, either singly or in combination, have more than a minimal effect on plaintiff's ability to perform basic mental work activities.

III.   On Remand, The ALJ Must Review And Reconsider Plaintiff's Remaining Claims.

Based on the foregoing, there are several matters that the ALJ needs to review and reconsider on remand.  As a result, the ALJ's conclusion regarding plaintiff's RFC and plaintiff's ability to do other work may change.  Therefore the Court does not reach plaintiff's remaining claims -- to wit, that the ALJ erred in:  (1) assessing a complete and accurate RFC; (2) posing a complete hypothetical question to the vocational expert; and (3) finding that plaintiff can perform jobs such as assembly worker and hand packager.  To properly review and consider these claims, the ALJ must correct the above-mentioned errors.  Further, to the extent that plaintiff's RFC is reassessed, additional testimony from a vocational expert likely will be required to determine what work, if any, plaintiff can perform.

///

///

14

1    IV.    <u>Remand Is Required</u>.

2

3        The decision whether to remand for further proceedings or order an immediate award of
4    benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir.
5    2000).  Where no useful purpose would be served by further administrative proceedings, or where
6    the record has been fully developed, it is appropriate to exercise this discretion to direct an
7    immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further
8    proceedings turns upon the likely utility of such proceedings.").  However, where there are
9    outstanding issues that must be resolved before a determination of disability can be made, and
10   it is not clear from the record that the ALJ would be required to find the claimant disabled if all
11   the evidence were properly evaluated, remand is appropriate.  Id. at 1179-81.

12

13       Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-
14   mentioned deficiencies and errors.  On remand, the ALJ must correct the deficiencies and errors
15   discussed above.  After so doing, the ALJ may need to reassess plaintiff's RFC, in which case,
16   additional testimony from a vocational expert likely will be needed to determine what work, if any,
17   plaintiff can perform.

18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  September 24, 2013

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

16